# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| BARBARA K. K.,[1] | No. 18 CV 50375 |
|     *Plaintiff*, | Magistrate Judge Iain D. Johnston |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
|     *Defendant*. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara K. K. brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying her social security benefits. For the reasons below, Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

## I. BACKGROUND

Plaintiff filed the application for disability benefits subject to this appeal on May 8, 2015.[2] R. 242. She alleged a June 18, 2010 disability onset date caused by Hashimoto thyroiditis,[3] spinal stenosis, arm impairments, fibromyalgia, digestive issues, and vertigo. R. 271. She later amended her alleged onset date to April 28, 2012. R. 17, 96-97. She alleged that she stopped working because of her impairments on June 18, 2010. R. 271. Plaintiff's date last

---

[1] Plaintiff's last name has been redacted in accordance with Internal Operating Procedure 22.
[2] Plaintiff previously filed a disability application that was ultimately denied on April 27, 2012. R. 96-97. That determination is not the subject of this appeal.
[3] Hashimoto thyroiditis is defined as "diffuse infiltration of the thyroid gland with lymphocytes, resulting in diffuse goiter, progressive destruction of the parenchyma and hypothyroidism." STEDMAN'S MEDICAL DICTIONARY 1988 (28th Ed. 2006). Symptoms can include, among other things, fatigue, sluggishness, memory lapses, and muscle weakness. *Hashimoto's Disease*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/hashimotos-disease/symptoms-causes/syc-20351855 (last visited Dec. 3, 2019).

insured is December 31, 2015. R. 19. On July 18, 2017, Plaintiff, represented by counsel,[4] appeared for a hearing before an Administrative Law Judge ("ALJ"). She was then 54 years old. R. 95. At the hearing, she testified about her work history, education, and symptoms, including migraines of varying severity, dizziness, memory issues, chronic fibromyalgia pain, knee and shoulder pain. R. 95-121.

After the hearing, the ALJ followed the five-step evaluation process set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and found that the Plaintiff was not disabled. The ALJ specifically found the following: (1) at Step One, that Plaintiff had not engaged in any substantial gainful activity since her alleged onset date of April 28, 2012, R. 20; (2) at Step Two, that Plaintiff had "the following severe impairments: fibromyalgia, degenerative disk disease of the cervical spine, migraine headaches, right-sided trigger finger, Hashimoto thyroiditis, and obesity," *id*.; (3) at Step Three, that Plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment, R. 22-23; (4) that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that she could never climb ramps and stairs, could occasionally balance, stoop, kneel, crawl, crouch and reach overhead with her bilateral upper extremities, could frequently handle and finger with her right upper extremity, must avoid concentrated exposure to extreme heat and cold, excessive humidity, wetness, vibration, noise, fumes, odors, dusts and gases, and must avoid unprotected heights or machinery with moving parts, R. 24; (5) and at Step Four, the ALJ found that Plaintiff could perform her past relevant work as a customer service trainer as defined in the Dictionary of Occupational Titles.[5] R. 29.

## II. STANDARD OF REVIEW

---

[4] Plaintiff's counsel in this appeal represented Plaintiff at the hearing before the ALJ. R. 17.
[5] DOT 239.362-014.

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The Commissioner's denial of disability is conclusive when supported by substantial evidence. *Id.*; *Skinner v. Astrue*, 487 F.3d 836, 841 (7th Cir. 2007). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The Court may not displace the ALJ's judgment by reconsidering facts and evidence, reweighing evidence, or by making independent credibility determinations. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Similarly, even if reasonable minds could differ on whether a claimant is disabled, a reviewing court must affirm the ALJ's decision if it is adequately supported. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

However, review of an ALJ's decision is not a rubber stamp of approval. *Biestek*, 139 S. Ct. at 1154 ("mere scintilla" not substantial evidence). The court must critically review the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The ALJ's conclusion will not be affirmed where he fails to build a logical bridge between the evidence and his conclusion, even if evidence exists in the record to support that conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (where opinion is "so poorly articulated as to prevent meaningful review" the case must be remanded). Additionally, courts may not build a logical bridge for the ALJ. *Mason v. Colvin*, 13 CV 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

## III. ANALYSIS

Before engaging in substantive analysis, the Court notes the general and conclusory nature of Plaintiff's briefs. For instance, the opening brief limits its legal arguments to the last four pages, and even that consists of only vague and conclusory arguments, jumping from point to point with little to no development, and, in some instances, unsupported by relevant case or record citations. *See* Dkt. 14.[6] It is neither the Commissioner's nor this Court's obligation to rebuild such poorly constructed arguments. *See, e.g.*, *Martinez v. Colvin*, 12 CV 50016, 2014 U.S. Dist. LEXIS 41754, *24-28 (N.D. Ill. Mar. 28, 2014) (internal citations omitted); *see also Olivas v. Berryhill*, 17 CV 50197, 2018 U.S. Dist. LEXIS 211743, at *12-13 (N.D. Ill. Dec. 17, 2018). Plaintiff's counsel risks forfeiting similar arguments in the future by failing to adequately brief and develop them. Regardless, the Court has attempted to construe Plaintiff's arguments to meaningfully evaluate them where possible.

Plaintiff argues the ALJ erred by cherry-picking facts that support his finding that Plaintiff is not disabled while ignoring evidence that might support a disability finding. Dkt. 14 at 8 (*citing O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016)). For instance, Plaintiff claims the ALJ improperly ignored her and her husband's testimony regarding her activities of daily living "on numerous occasions." *Id*. Even a cursory glance at the ALJ's decision reveals that this argument is meritless. Along with addressing the relevant functional reports Plaintiff completed throughout her medical treatment history,[7] which the ALJ is

---

[6] Ironically, social security claimants regularly (and rightly) fault ALJ's for engaging in similar conclusory, "let the reader connect the dots" type of analysis for failure to build a logical bridge to a conclusion regarding a claimant's disability. *See, e.g.*, *Hearan v. Berryhill*, 17 C 05452, 2018 U.S. Dist. LEXIS 113633, *15-16 (N.D. Ill. July 9, 2018); *Cinatl v. Astrue*, 10 C 2398, 2011 U.S. Dist. LEXIS 48987, at *17 (N.D. Ill. May 6, 2011).

[7] *See*, R. 24 referring to R. 295 (2015 Adult Functional Report); R. 25 referring to R. 336 (2015 Headache Questionnaire); R. 25 referring to R. 347 (2015 Pain Questionnaire). To the extent Plaintiff argues the ALJ *only* considered Plaintiff's "bad days" as reported in her 2015 Adult Functional Report, she ignores

permitted to do under the regulations,[8] the ALJ discussed and considered both Plaintiff's and her husband's hearing testimony. R. 25, 28-29 referring to R. 102–24, 295–302, 319–23, 336, 347–49. The ALJ found Plaintiff's subjective complaints "less than fully consistent with the entirety of the evidence with respect to the severity of symptoms and limitations associated with her impairments." R. 28. In his credibility analysis, the ALJ gave three main reasons for discounting Plaintiff's subjective complaints: (1) Plaintiff complained of frequent days of disabling symptom levels, yet her doctors regularly reported no unusual fatigue, distress, gait, coordination, or leg strength, and rarely (twice) observed vertigo symptoms throughout her treatment history; (2) Plaintiff regularly reported severe migraines to treaters, yet she never presented with one or with any photophobia evincing the same; and (3) Plaintiff admitted to being able to do various home activities (meal preparation, driving, shopping, chores, teaching a class at her church, dancing, woodworking) that belied "a complete inability to perform sedentary work."[9] *Id*. Additionally, instead of ignoring Plaintiff's husband's opinion regarding the severity of Plaintiff's limitations, the ALJ gave his opinion "little weight" and cited the same reasons for discounting this opinion as he did for discounting Plaintiff's. *Id*.

The Court views an ALJ's credibility determination with deference and will reverse that determination only when it is "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir.

---

the other reports and hearing testimony regarding Plaintiff's subjective complaints that the ALJ explicitly addressed in his decision as discussed below.
[8] 20 C.F.R. § 404.1529(a); SSR 96-8p.
[9] An ALJ may not point to a claimant's ability to engage in daily activities as proof that she can work full time. *See Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2012). However, the ALJ here appropriately "considered [Plaintiff's] description of [her] daily activities in assessing whether [her] testimony about the effects of [her] impairments [were] credible" in light of all of the evidence when justifying his decision to discount Plaintiff's subjective complaints in his credibility analysis. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016); *see also Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (ALJ may consider daily activities that undercut suggestions that claimant could not perform any tasks in the workplace).

2015); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). When evaluating a claimant's subjective symptoms, an ALJ should consider the medications taken, functional limitations, allegations of pain, aggravating factors, objective medical evidence, and daily activities. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); 20 C.F.R. § 404.1529(c)(3); SSR 16-3p. Notably, Plaintiff does not take issue with any of the specific justifications offered by the ALJ for discounting her subjective complaints and her husband's testimony. Regardless, they are all valid reasons for discounting these opinions absent any argument to the contrary. 20 C.F.R. §§ 404.1527(c), (f); 404.1529(c)(3). And the ALJ relied on and discussed substantial evidence to support his assertions regarding Plaintiff's reports to her doctors and their medical findings. *See* SSR 16-3p; R. 24-29, 102-24, 295-302, 319-23, 347-49, 716, 744, 761, 772, 790, 798, 813-16, 822, 825, 863-64, 870, 877, 881, 883-85, 957-59, 974, 979-80, 985, 991-92, 997-98, 1004-05, 1017, 1022, 1025, 1034, 1041-42, 1051, 1059-60, 1091-92, 1099-1100, 1110-11, 1117-18, 1207-09, 1258, 1261-63. The ALJ considered Plaintiff's complaints to doctors throughout her treatment history as well as her hearing testimony and her husband's opinions regarding the same. The ALJ discounted both and gave valid reasons for doing so which Plaintiff does not challenge. Therefore, the ALJ did not err by ignoring Plaintiff's subjective complaints or her husband's testimony.

Relatedly, Plaintiff next argues that the ALJ "failed to mention the effect of [her] Hashimoto thyroiditis" and that this condition "could have caused many of the subjective complaints [she] had."[10] Dkt. 14 at 8. In support, Plaintiff cites to one page of the the ALJ's decision (R. 28) and one page of Plaintiff's hearing testimony where she claimed she was

---

[10] Plaintiff raises for the first time in her one-and-a-half-page reply brief the argument that the ALJ also ignored Plaintiff's fibromyalgia, again without citing any authority. Because Plaintiff raised this argument for the first time in her reply brief, and failed to develop the argument generally, it is forfeited. *See, e.g.*, *Mike H. v. Saul*, 18 CV 50162, 2019 U.S. Dist. LEXIS 127164, at *10 (N.D. Ill. 2019).

spending 20 hours in bed per day due to fatigue (R. 101).[11] However, the ALJ accepted the medical diagnosis of Hashimoto thyroiditis and found it to be a severe impairment. R. 20, 26. Throughout his opinion, the ALJ discussed and cited to the medical evidence relating to—and Plaintiff's complaints to her treaters of—vertigo, extreme fatigue, weakness, and memory issues, before finding Plaintiff's subjective complaints related to these limitations not entirely consistent with the record. R. 24-29, 296-302, 553-55, 882, 973-75, 978–80, 985, 991–92, 997–98, 1004–05, 1017, 1025, 1034, 1041–42, 1051, 1060, 1092, 1100, 1110–11, 1208-09. Thus, the ALJ did not ignore this impairment or Plaintiff's subjective complaints that "could" be related to it.[12] As discussed above, the ALJ gave valid reasons for discounting Plaintiff's subjective complaints that Plaintiff does not challenge. Plaintiff has identified no clear basis to find the ALJ erred when evaluating Plaintiff's subjective complaints related to Hashimoto thyroiditis.

Plaintiff next argues the ALJ erred by substituting his own opinions for those of the medical professionals and making his own medical judgments. Dkt. 14 at 7, 9 (*citing Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003); *Whitney v. Schwieker*, 695 F.2d 784, 787 (1982)). For example, Plaintiff argues the ALJ failed to account for "several times when the [she] had issues walking because both of her dizziness and lower leg weakness," citing to a treatment note she contends the ALJ "clearly overlooked." *Id*. at 9. However, not only does the

---

[11] Later in her brief, Plaintiff cites two pages of the record which she claims "proved that [her Hashimoto thyroiditis] caused many issues." Dkt. 14 at 9 (citing R. 1050, 1091). However, Plaintiff does not identify what these "many issues" may be, nor does she point to any medical opinion to support this general contention. And although both treatment notes show that Plaintiff was diagnosed with hypothyroidism at some point, and delineate the various prescriptions she was taking during those times, they do not describe what issues are attributable that diagnosis. In fact, the second treatment note from a visit on August 4, 2015, states that Plaintiff "had [H]ashimoto but currently thyroid tests ok." R. 1091. Regardless, to the extent Plaintiff argues the ALJ ignored other unidentified limitations related to thyroiditis, the argument is vague, undeveloped, and not supported by citation to relevant authority. Therefore, it is forfeited. *Martinez*, 2014 U.S. Dist. LEXIS 41754, at *25 (N.D. Il. Mar. 28, 20114); *see also Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 939 (N.D. Ill. June 5, 2019) (internal citations omitted)).
[12] *See supra*, note 3.

ALJ have no duty to evaluate every single piece of evidence in the record, *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012), Plaintiff ignores the portion of the ALJ's decision where he explicitly and accurately discussed the contents of the same treatment note she cites:

> The claimant met with a neurologist, Javaid Iqbal, M.D., on August 24 and October 5, 2011 and now reported episodes of dizziness. Dr. Iqbal now found some weakness in the left lower extremity with diminished reflexes, but otherwise observed normal strength and sensation in all other extremities and a normal gait in both examinations.

R. 26 *citing* R. 974, 979–80. The ALJ went on to discuss various other instances and medical findings from Plaintiff's five-year treatment history related to her complaints of vertigo, dizziness, and strength and ability to walk, including the only two instances where Plaintiff experienced vertigo symptoms when made to look at rapidly moving or changing objects during doctor's visits. R. 26-28, 974, 978–80, 985, 991–92, 997–98, 1004–05, 1017, 1025, 1034, 1041–42, 1051, 1060, 1092, 1100, 1110–11, 1208-09. The ALJ then accurately noted that except for these two instances over a five-year period and despite Plaintiff's complaints of vertigo and dizziness, weakness, and chronic pain, her providers "repeatedly observed normal motor function, normal coordination, and a normal gait during their examinations," good coordination, reflexes, and no indication of any unusual fatigue. R. 26-28. Thus, the ALJ did not overlook this treatment note nor Plaintiff's complaints of dizziness and lower leg weakness generally. Instead, the ALJ considered these and many other of Plaintiff's subjective complaints before finding them not entirely consistent with the medical record.

Similarly, Plaintiff next argues that the ALJ played doctor because "he found that the claimant's symptoms were not consistent with the medical evidence" and "the ALJ assumed that the severity of [Plaintiff's] diagnoses does not match up with the subjective and objective

8

medical evidence provided by claimant." Dkt. 14 at 9.[13] However, as an initial matter, this argument misstates the ALJ's conclusions: the ALJ did not find Plaintiff's *symptoms* "not consistent" with the medical record; nor did he "assume" that Plaintiff's symptoms were not as severe as she alleged. Instead, he found Plaintiff's complaints regarding the claimed *severity* of her symptoms were not entirely consistent with the medical evidence for the specific reasons previously discussed. R. 28. Again, the ALJ gave valid reasons for discounting Plaintiff's subjective complaints that she does not challenge.

Regardless, the ALJ relied on two medical opinions when formulating Plaintiff's RFC and concluding she was capable of sedentary work. Plaintiff argues the ALJ erred when evaluating these medical opinions as discussed below, but the record belies that argument. An ALJ must consider the factors in 20 C.F.R. § 404.1527(c) when weighing medical opinions. The record in this case contains no medical opinions from Plaintiff's treating physicians, so no medical opinion could be entitled to controlling weight in this case. *Murphy v. Astrue*, No. 11 CV 831, 2011 U.S. Dist. LEXIS 102518, at *30 (N.D. Ill. Sept. 12, 2011). Instead, the ALJ was required to weigh the opinions in light of the factors in 20 C.F.R. § 404.1527(c), including consistency with the medical record, familiarity with the Commissioner's regulatory program, and familiarity with the entire case record.

First, the ALJ gave the opinion of Dr. Nimmagadda "great weight" and adopted his recommendations as to Plaintiff's RFC for the following reasons:

> This opinion is consistent with the record as a whole, particularly the degree of degenerative disease confirmed by imaging testing, but also with the claimant's

---

[13] Here, Plaintiff implies the ALJ misstated the contents of a March 6, 2010 emergency room treatment note. Dkt. 14 at 9 ("The ALJ noted that claimant was admitted to the hospital for early treatment of hypothyroidism and headaches, but then claimed that the claimant was not in distress."). The treatment note states that Plaintiff "is a middle-aged obese female sitting on the stretcher in mild discomfort *with no acute distress*." R. 509 (emphasis added). The ALJ did not err by stating Plaintiff claimed to be suffering from headaches and pains but otherwise "appeared to be in no acute distress" during that visit. R. 25.

> treaters [sic] regular reports of her undistressed [sic] appearance, normal coordination, and normal gait during examinations, as well as her admitted wide range of home activities. In addition, Dr. Nimmagadda is familiar both with the longitudinal record as a whole and with the Administration's regulatory program. There is no medical opinion in the record that posits greater functional limitations than those set forth in Dr. Nimmagadda's opinion.

R. 28. These are all valid reasons to justify the ALJ's weight determination. A medical opinion's consistency with the medical record is a factor to be considered when weighing the opinion, see 20 C.F.R. § 404.1527(c)(4), and here the ALJ cited to the medical record to establish that Dr. Nimmagadda's opinion was consistent with the record. 20 C.F.R. § 404.1527(c)(4); *see* R.24-29, 716, 744, 761, 772, 790, 798, 813-16, 822, 825, 863-64, 870, 877, 881, 883-85, 974, 979-80, 985, 991-92, 997-98, 1004-05, 1017, 1025, 1034, 1041-42, 1051, 1060, 1092, 1100, 1110-11, 1117-18, 1208-09, 1258, 1261, 1263. Familiarity with the record and the Administration's regulatory program are both factors to be considered, and Dr. Nimmagadda had reviewed the entire medical record and was familiar with the Administration's disability program when he gave his opinion. 20 C.F.R. § 404.1527(c)(6), R. 124-29. The ALJ did not err in affording Dr. Nimmagadda's opinion great weight.

Second, the ALJ gave the opinion of Dr. Hinchen, a state medical consultant, "some" weight. R. 28. The ALJ reasoned that Dr. Hinchen did not have the benefit of reviewing medical evidence received at the hearing level, whereas Dr. Nimmagadda testified at the July 18, 2017 hearing and was able to review that evidence. *Id.*[14] Again, the ALJ was entitled to use this reason to justify his weight determination; thus, he did not err by doing so. 20 C.F.R. § 404.1527(c)(6).

Rather than directly attacking the ALJ's justifications for weighing these medical opinions, Plaintiff argues generally that the ALJ should have given "more weight" to the medical

---

[14] The ALJ also accurately noted that Dr. Nimmagadda opined Plaintiff was more functionally limited than Dr. Hinchen had. *Compare* R. 124-29 *to* R. 154-60.

records from her treaters, namely Dr. Iqbal, Dr. Dansdill, and Dr. Bayer, because they were present during the treatment process, whereas Dr. Nimmagadda and Dr. Hinchen were not. Dkt. 14 at 10. Plaintiff cites no caselaw, regulation, or specific piece of the record to support this argument. In any event, Plaintiff's treaters did not provide any opinion regarding Plaintiff's functional limitations, and the ALJ gave valid reasons to justify the weight he gave to the only medical opinions of record to do so as discussed above. The Court will not fault the ALJ for refusing to "play doctor" and ignore these medical opinions absent any specific reason to warrant it, particularly because the ALJ otherwise appropriately evaluated the medical record as discussed above. *See Rice v. Barnhart*, 384 F.3d 363, 370–71 (7th Cir. 2004) (ALJ entitled to rely on State agency consultative doctor's opinion in part because "there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."); *see also Frazee v. Berryhill*, 733 F. App'x 831, 834 (7th Cir. 2018) ("The ALJ cannot be faulted for not 'playing doctor' and independently drawing a different [disability] conclusion from [the doctor's] tests."). And to the extent Plaintiff suggests this Court should evaluate all the medical evidence and find that it outweighs the only medical opinions on record, the Court may not do so given the ALJ has appropriately analyzed the medical record and justified his weight determinations. *Overman*, 546 F.3d at 462; *Elder*, 529 F.3d at 413. Therefore, the ALJ has not erred either by "playing doctor" or by incorrectly weighing the medical opinions on record.

  Plaintiff next argues "there are serious flaws in the ALJ and medical expert's decision of the medical evidence and claimant's ability to work." Dkt. 14 at 10. In support, she cites to (1) the ALJ's RFC findings that Plaintiff could, among other things, occasionally reach, frequently finger and handle with her right upper extremity, and limiting her exposure to excessive vibrations, (2) her hearing testimony where she claimed she could not reach above her head and

11

do her hair, R. 122, and (3) her testimony that vibrations are comforting to her hands. *Id*. However, this argument again relies on Plaintiff's subjective complaints regarding the severity of her symptoms. As previously discussed, the ALJ appropriately justified his decision to discount Plaintiff's testimony regarding her subjective complaints. Additionally, the only doctors on record to give an opinion as to Plaintiff's functional limitations both opined Plaintiff could perform sedentary work, and Dr. Nimmagadda opined Plaintiff could occasionally reach overhead. Plaintiff identifies no "serious flaws" in the ALJ's RFC determination.

Finally, Plaintiff mentions in one sentence that the vocational expert who testified at the July 18, 2017 hearing "could not ascertain how many days of work claimant would miss because of her symptoms." Dkt. 14 at 10. To the extent this one sentence can be read to be an argument, Plaintiff cites no authority or record evidence to support it, thus it is forfeited. *Martinez*, 2014 U.S. Dist. LEXIS 41754, at *25. The ALJ has provided a logical bridge supported by substantial evidence to support his disability determination, and Plaintiff has identified no reason to overturn it.

## IV. CONCLUSION

For those reasons, the Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

Date:   December 3, 2019

Iain D. Johnston
United States Magistrate Judge